UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LELIA M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-02237-SEB-TAB |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Lelia M. appeals the Social Security Administration's denial of her application for disability insurance benefits.  [Filing No. 15.]  Plaintiff argues that the Administrative Law Judge erred at step two of the SSA's five-step evaluation process for determining whether an individual is disabled by assessing Plaintiff's depression, bipolar disorder, generalized anxiety disorder, and post-traumatic stress disorder as non-severe.  While the ALJ's step two determination involves merely a *de minimis* standard, on appeal the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner.  Here, the ALJ's decision reflects a thorough analysis of all the evidence.  Plaintiff has not shown that the ALJ unreasonably evaluated the assessments of Plaintiff's functioning in finding that Plaintiff's mental impairments had no more than a minimal impact on her ability to do basic work activities.  Accordingly, Plaintiff's request for remand [Filing No. 15] should be denied.

**II.    Background**

On September 18, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also protectively filed a Title XVI application for supplemental security income on September 23, 2020. In both applications, Plaintiff alleged disability beginning on April 28, 2020. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2020, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following medically determinable impairments: bilateral carpal tunnel syndrome; lumbar degenerative disc disease; hypertension; depression/bipolar; generalized anxiety disorder; and post-traumatic stress disorder. However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that had significantly limited her ability to perform basic work-related activities for 12 consecutive months. Thus, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. [Filing No. 12-2, at ECF p. 19.] Accordingly, the ALJ concluded at step two that Plaintiff was not disabled.

### III. Discussion

Plaintiff's sole argument on appeal is that the ALJ erred by concluding at step two that Plaintiff's mental health impairments (depression, bipolar disorder, generalized anxiety disorder, and PTSD) were non-severe. The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

At step two of the five-step sequential evaluation process, the ALJ must determine whether a claimant has a medically determinable impairment or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). However, "[c]ourts have construed 'severe' to mean only more than 'slight.' " *Elizabeth H. v. Kijakazi*, No. 20 CV 7604, 2023 WL 358784, at *3 (N.D. Ill. Jan. 23, 2023). "The Step 2 determination is a *de minimis* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697

3

(7th Cir. 2016) (internal citation and quotation marks omitted). *See also Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) ("Regarding step 2, as long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. Therefore, the step two determination of severity is merely a threshold requirement." (Internal citation, quotation marks, brackets, and ellipses omitted)).

Plaintiff argues that her mental impairments "plainly cleared the applicable *de minimis* standard." [Filing No. 15, at ECF p. 11.] In support, Plaintiff first cites to medical records from June 2019 and December 2019. However, Plaintiff did not allege that her disability began until April 2020. [Filing No. 12-2, at ECF p. 18.] Thus, her mental health complaints in 2019 were not particularly important to the ALJ's evaluation of psychological assessments from 2021, especially since the ALJ still noted in her decision that Plaintiff began medication in 2019 but received no further psychological treatment until February 2021. [Filing No. 12-2, at ECF p. 22.] The ALJ need only address the most important evidence, not every piece of evidence in the record. *See, e.g., Gedatus*, 994 F.3d at 901 ("And if [the plaintiff] is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective.").

Plaintiff next cites to her February 2021 complaints to Dr. Kelsey Ann Cowden, who observed Plaintiff with an anxious mood, diagnosed Plaintiff with depression and generalized anxiety disorder, and changed her medication. [Filing No. 15, at ECF p. 12.] However, the ALJ's decision directly references Plaintiff's reported increased symptoms in February 2021 and Dr. Cowden changing her medications at that time. In addition, the ALJ noted that the very next month, Plaintiff reported her mood was well-controlled with the new medication treatment plan. [Filing No. 12-2, at ECF p 22.] Thus, Plaintiff's request to this Court to reweigh this evidence is

4

improper. *See, e.g., Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022) ("In order to conclude that [a state agency consultant's opinion] provided a basis for a qualitative limitation, this court would have to reweigh the evidence, contrary to well-settled case law on the standard of review for Social Security appeals.").

Similarly, Plaintiff asks the Court to reweigh the abnormalities observed by consultative-examining psychologist Dr. Thomas Smith in July 2021. [Filing No. 15, at ECF p. 13.] Plaintiff recites Dr. Smith's examination findings of flat affect, sad eyes, and some anxiousness, as well as his opinion that Plaintiff had major depression and probably a bipolar disorder, as well as PTSD. [Filing No. 15, at ECF p. 13-14.] However, the ALJ specifically discussed the abnormalities on that exam, including that Plaintiff took a relatively long time to complete a test, sometimes appeared not to understand simple concepts, and frequently asked to have questions repeated or explained. [Filing No. 12-2, at ECF p. 22.] The ALJ also noted that Plaintiff displayed mood disturbance and weak fund of general knowledge. [Filing No. 12-2, at ECF p. 22.] The ALJ then repeatedly and specifically contrasted the abnormal results of that one exam, which was part of Plaintiff's application for disability benefits, with the generally normal results of the exams conducted by treatment providers, as well as other evidence indicating Plaintiff had normal psychological functioning. Thus, this is again another improper request to reweigh the evidence. *Id.*

Plaintiff also places great weight on the medical opinion of primary care physician Dr. Ryan Kaufman. [Filing No. 15, at ECF p. 12.] Dr. Kaufman completed a medical source statement in March 2021, in which he opined that Plaintiff exhibited significant difficulty "in sleep, mood, loss of interest, guilt, concentration, appetite, psychomotor symptoms and panic causing significant functional limitation." [Filing No. 12-7, at ECF p. 23.] Dr. Kaufman

5

indicated that his clinic had treated Plaintiff for over three years, and he had personally treated Plaintiff for two months.[1]  Dr. Kaufman opined that since August 2017, Plaintiff had mildly limited ability to adopt or manage herself and understanding and memory, noting long-term memory and difficulty maintaining hygiene.  He further opined that Plaintiff had moderately limited ability to understand, remember, or apply information; interact with others; or concentrate, persist or maintain pace.  [Filing No. 12-7, at ECF p. 26.]  Dr. Kaufman concluded that Plaintiff would be off task more than 25% of the time and absent from work over four times per month.  [Filing No. 12-7, at ECF p. 23.]

Once again, the ALJ directly addressed the evidence upon which Plaintiff now relies. The ALJ noted that Dr. Kaufman is an acceptable medical source that treats Plaintiff, but concluded that his opinions were not persuasive.  [Filing No. 12-2, at ECF p. 24.]  The ALJ explained that Dr. Kaufman's opinions were inconsistent with each other and with Plaintiff's work history.  [Filing No. 12-2, at ECF p. 24-25.]  The ALJ once again emphasized that the dates referenced by Dr. Kaufman and Plaintiff's claim did not align, as Dr. Kaufman indicated that he had treated Plaintiff since either March or August 2018, yet his opinion said Plaintiff's extreme hygiene, memory, and concentration limitations had persisted since August 2017.  [Filing No. 12-7, at ECF p. 23.]  Moreover, as noted above, Plaintiff did not claim her disability began until April 2020, and from 2017 through April 2020, she worked eight hours a day, three days a week as a stocker at Walmart.  [Filing No. 12-6, at ECF p. 8.]

Ultimately, this Court defers to the ALJ's weighing of the medical opinions as long as a reasonable mind could accept the ALJ's explanation.  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278

---

[1] However, in a November 2021 opinion addressing Plaintiff's physical conditions, Dr. Kaufman said he had treated Plaintiff since August 2018.  [Filing No. 12-7, at ECF p. 184.]

(7th Cir. 2022) ("[W]e do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion."). The ALJ provided multiple clear and reasonable bases for her conclusion that Dr. Kaufman's opinion was unpersuasive and other opinions, such as that of state-agency psychological expert Dr. Donna Unversaw, were persuasive and supported the conclusion that Plaintiff's mental impairments were nonsevere.

The ALJ's decision logically sets forth how exam results were not consistent with the extreme problems in concentration, memory, or hygiene that Dr. Kaufman opined. On the other hand, Plaintiff completely ignores Dr. Unversaw's opinion in making her arguments on appeal. In July 2021, Dr. Unversaw found Plaintiff had no significant work-related mental dysfunction. Dr. Unversaw explained that despite diagnoses of depression, bipolar, anxiety, and trauma, Plaintiff spent time watching her granddaughter, was neatly dressed, was not interested in counseling, was oriented, and had normal speech and judgment. [Filing No. 12-3, at ECF p. 17.] Dr. Unversaw also noted Plaintiff's March 2021 report that psychological medications improved her mood, and an exam then showed normal attention, mood, affect, speech, and behavior. [Filing No. 12-3, at ECF p. 17.] Finally, Dr. Unversaw noted Plaintiff later reported improved memory. [Filing No. 12-3, at ECF p. 17.]

The ALJ's decision provides additional thorough reasoning for concluding that Plaintiff's mental impairments were not severe as well. For instance, Plaintiff reported to medical providers in 2021 that her psychological symptoms were well controlled on medication and that she did not need psychological treatment. In February and March 2021, Plaintiff told a provider she was not interested in restarting counseling. [Filing No. 12-7, at ECF p. 35.] As noted above, in March 2021, Plaintiff told a primary care provider that her "mood is well controlled." [Filing

7

No. 12-7, at ECF p. 90.]  In July 2021, Plaintiff declined laboratory testing for her reported memory concerns.  [Filing No. 12-7, at ECF p. 151.]  Thus, the ALJ reasonably concluded that Plaintiff's well-controlled symptoms and lack of need for psychological treatment supported her conclusion that Plaintiff's mental impairments did not result in more than minimal symptoms or work-related functional limitations.

Finally, Plaintiff claims that the ALJ improperly relied on Plaintiff's daily activities as evidence of the non-severity of her mental impairments.  [Filing No. 15, at ECF p. 14.]  Plaintiff further argues that the ALJ "failed to draw any logical bridge between activities such as watching movies and television and performing one's own personal care and the ability to perform work on a full-time basis."  [Filing No. 15, at ECF p. 16.]  However, Plaintiff herself reported engaging in psychologically demanding activities, including extensive chores and childcare.  [Filing No. 12-2, at ECF p. 22-23.]  Plaintiff reported in June 2021 that she cleaned bathrooms, floors, and living rooms and did laundry.  In addition, on a typical day, Plaintiff reported that she cooked for her granddaughter, bathed her, and ensured she got on the bus to school, with help from her older grandchildren.  [Filing No. 12-6, at ECF p. 26.]

It is Plaintiff, not the ALJ, who cherry picks among her admitted activities to invalidate that portion of the ALJ's decision.  The ALJ explicitly relied on much more than simply Plaintiff's ability to care for her personal needs and watch television or movies.  The ALJ reasonably supported her finding that Plaintiff's activities of daily living fail to fully support her allegations regarding the severity of her symptoms and resulting functional limitations.  And the ALJ did not solely rely on Plaintiff's daily activities, but rather simply considered this evidence in addition to the medical and opinion evidence noted above.  For all these reasons, Plaintiff's request for review [Filing No. 15] should be denied.

8

## IV. Conclusion

The ALJ reasonably determined that Plaintiff did not have significant, work-related mental impairments from her alleged onset date in April 2020 through the date of the ALJ's decision, and substantial evidence supported the ALJ's decision. Accordingly, Plaintiff's request for review should be denied. [Filing No. 15.] Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 7/17/2023

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email