UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LELIA M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-02237-SEB-TAB |
| | ) |
| MARTIN O'MALLEY Commissioner of Social Security Administration,[2] | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Lelia M. ("Lelia M.") not entitled to Social Security disability insurance benefits. This case was referred to Magistrate Judge Baker for initial consideration. On July 17, 2023, Magistrate Judge Baker issued a Report and Recommendation, recommending that the Administrative Law Judge's ("ALJ") decision denying Lelia M. benefits be affirmed. This cause is now before the Court on Lelia M.'s Objections to the Magistrate Judge's Report and Recommendation. Dkt. 20.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## STANDARD OF REVIEW

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or was the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Our review of the ALJ's decision does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When a party objects to specific elements of a magistrate judge's report and recommendation, the district court conducts a *de novo* review to determine for itself whether the Commissioner's decision was supported by substantial evidence or, rather, was the result of an error of law. Fed. R. Civ. P. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A.*

2

*Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009). We have followed those guidelines in conducting this review.

## BACKGROUND[3]

On September 18, 2020, Lelia M. protectively applied for disability insurance benefits ("DIB") and, on September 23, 2020, for supplemental security income. In both applications, Lelia M. alleged a disability onset date of April 28, 2020. The agency denied Lelia M.'s applications initially and on reconsideration. After a hearing, the ALJ determined that Lelia M. was not disabled.

Following the five-step sequential process, the ALJ first found, at Step One, that Lelia M. had not engaged in substantial gainful activity since the alleged disability onset date. At Step Two, the ALJ concluded that Lelia M. suffered the following medically determinable impairments: bilateral carpal tunnel syndrome; lumbar degenerative disc disease; hypertension; depression/bipolar; generalized anxiety disorder; and posttraumatic stress disorder ("PTSD"). However, the ALJ determined that Lelia M. did not have an impairment or combination of impairments that had significantly limited her ability to perform basic work-related activities for twelve consecutive months; thus, the ALJ found, Lelia M. did not have a severe impairment or combination of impairments. Accordingly, the ALJ concluded that Lelia M. was not disabled.

---

[3] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

3

On review before the Magistrate Judge, Lelia M. argued that the ALJ erred in concluding that her mental health impairments—namely, depression, bipolar disorder, generalized anxiety disorder, and PTSD—were non-severe. The Magistrate Judge disagreed with Lelia M. and recommended that we affirm the ALJ's decision, ultimately concluding that the ALJ's decision was both reasonable and supported by substantial evidence.

Lelia M. timely objected to the Magistrate Judge's Report and Recommendation, reasserting that the ALJ erred at Step Two. Lelia M.'s objection is briefed (albeit without the benefit of a reply brief) and awaits our ruling.

## DISCUSSION

At Step Two, the ALJ must evaluate whether a claimant presents a medically determinable impairment or a combination of impairments that qualifies as severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment (or combination thereof) becomes severe when it significantly limits a claimant's physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Nevertheless, the Step Two inquiry "is a *de minimus* screening for groundless claims intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016). The ALJ's task at Step Two is to "evaluate the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the [impairment] symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016).

With regard to Lelia M.'s mental health impairments, the ALJ observed that "medical records primarily document diagnoses of depression and generalized anxiety disorder

4

with scattered mentions of [PTSD] and/or bipolar disorder. In addition, more recently the claimant has reported memory impairment to her primary medical care sources." Dkt. 12-2 at 22. In evaluating Lelia M.'s mental impairments under "paragraph B," the ALJ found only "mild" limitations in all four functional categories, and, because the evidence did not otherwise indicate more than minimal limitations on Lelia M.'s ability to perform basic work activities, the ALJ concluded that the mental impairments were not severe. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as . . . 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

On appeal, Lelia M. maintains that her mental health treatment records and the related medical opinions comprise "a wealth of evidence" that considered together clear the *de minimus* hurdle at Step Two. Pl.'s Obj. 3, dkt. 20. Lelia M. begins by citing her June 2019 medical records, which detail her visit to Community Group Family Medicine for a medication refill. According to these records, Lelia M. experienced an episode of recurrent major depressive disorder; generalized anxiety disorder; numbness and tingling in both hands; essential hypertension, benign; and plantar faciitis of right foot. Dkt. 12-7 at 10. Contrary to Lelia M.'s characterization, the ALJ did in fact acknowledge these medical records, noting that, after her doctors adjusted her medication regime, Lelia M. "was stable . . . until early 2021," at which time she reported increased symptoms and received another medication adjustment. Dkt. 12-2 at 22. By March 2021, Lelia M. reported that her "mood [wa]s well controlled." Dkt. 12-7 at 90. Notably, at both visits, Lelia M. expressed her

5

disinterest in counseling services. *Id.* at 35, 90. Likewise, Lelia M. repeatedly declined mental health treatment and laboratory testing that her doctors had offered to her. Dkt. 12-2 at 22.

True, the ALJ did not summarize the details of the 2019 medical reports with complete specificity, nor was she required to do so, as "all summaries must be partial and selective." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). The ALJ sufficiently noted Lelia M.'s 2019 mental health complaints, highlighting that she received no further psychological treatment until early 2021. Coupled with the fact that Lelia M.'s alleged disability onset date was April 2020, the ALJ identified the differences in Lelia M.'s 2019 and 2021 treatment records and reasonably concluded that the most relevant medical reports did not support her current application. In any event, we cannot (and therefore do not) reweigh the evidence where, such as here, the ALJ soundly and plainly explicated her reasoning. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Next, Lelia M. directs us to the medical opinion of her primary care physician Dr. Ryan Kaufman, M.D. ("Dr. Kaufman"). According to Dr. Kaufman's March 2021 treating source statement, he observed Lelia M. to exhibit significant difficulty "in sleep, mood, loss of interest, guilt, energy, concentration, appetite, psychomotor symptoms, and panic causing significant functional limitation." Dkt. 12-7 at 23. He also noted that she was "moderately limited" in her ability to understand, remember, or apply information; ability to interact with others; and ability to concentrate, persist, or maintain pace. *Id.* at 25. In this context, moderately limited "means that the individual's ability to function independently, appropriately, effectively, and on a sustained basis is fair." *Id.* Dr. Kaufman ultimately

opined that Lelia M. would likely be off task greater than twenty-five percent of the workday and absent more than four days per month due to her impairments and treatment.

Despite Lelia M.'s contentions otherwise, the ALJ did, in fact, consider Dr. Kaufman's medical opinion, specifically finding that Dr. Kaufman's opinions were not persuasive. Dkt. 12-2 at 24. The ALJ noted inconsistencies in Dr. Kaufman's reports: For example, in the March 2021 medical report, Dr. Kaufman stated that Lelia M. had been treated at the practice for over three years and by him personally for only two months. However, in an October 2021 report, Dr. Kaufman indicated that he had begun treating Lelia M. in August 2018. The ALJ also noted that Dr. Kaufman's medical report was supported by little more than Lelia M.'s own statements—not objective medical evidence—and, further, that his medical opinion was incompatible with Lelia M.'s work history; to wit, Dr. Kaufman opined that the claimant's symptoms and limitations first appeared in August 2017, despite Lelia M.'s parttime employment as a stocker at Walmart from 2017 through April 2020.

"[W]e do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and we overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Here, the ALJ clearly addressed Dr. Kaufman's medical opinion, "though he did not assign the significance to it that [the claimant] prefers." *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010). In assessing the record evidence, the "ALJ may consider inconsistencies between the severity of symptoms that the claimant described to the [Social Security Administration] compared with when she [sought] treatment, the failure to regularly seek treatment for those symptoms, the level of treatment, and the effectiveness of

7

treatment." *Evelyn M. v. Kijakazi*, No. 1:20-cv-03144-TWP-TAB, 2022 WL 4125894, at *7 (S.D. Ind. May 6, 2022) (citations omitted). Here, the ALJ did just that.

Lelia M. cites abnormalities documented in her July 2021 consultative examination with Dr. Thomas Smith, Ph.D., HSPP ("Dr. Smith"), which examination was a component of her DIB application. According to Dr. Smith's findings, Lelia M. had "major depression and probably a bipolar disorder" as well as PTSD and "some anxiety." Dkt 12-7 at 134. In the administrative decision, the ALJ discussed other abnormalities that Dr. Smith had observed, including that Lelia M. "took a relatively long time to perform Serial 7's, sometimes appeared not to understand simple concepts, and frequently asked to have questions" either "repeated or explained." Dkt. 12-2 at 22. As the Magistrate Judge previously described, "[t]he ALJ then repeatedly and specifically contrasted the abnormal results of that one exam . . . with the generally normal results of the exams conducted by treatment providers, as well as other evidence indicating [the claimant] had normal psychological functioning." R. & R. 5, dkt. 19. For example, the ALJ noted that Lelia M. had denied medication side effects, had indicated that her medications were helpful, and, despite providers offering both mental health treatment and laboratory testing for reported memory concerns, had repeatedly said she was not interested in these measures. Dkt. 12-2 at 22. Additionally, Lelia M. generally displayed normal mood/affect, was cooperative with appropriate behavior, and maintained appropriate appearance/hygiene. *Id.* Thus, we share the Magistrate Judge's view that "the ALJ reasonably concluded that [Lelia M.'s] well-controlled symptoms and lack of need for psychological treatment supported her conclusion that [Lelia

8

M.'s] mental impairments did not result in more than minimal symptoms or work-related functional limitations." R. & R. 8, dkt. 19.

At bottom, we hold that the ALJ sufficiently explicated the reasons Drs. Kaufman and Smith's medical opinions were found unpersuasive, especially in light of other medical opinions, Lelia M.'s own exam results, and her daily activities.[4] To reach a contrary conclusion, we "would have to reweigh the evidence, contrary to well-settled case law on the standard of review for Social Security appeals." *Reynolds*, 25 F.4th at 474. Lelia M.'s request that we reweigh medical evidence, including that to which the ALJ already attributed little persuasive value, is unavailing. In reviewing an ALJ's determination for substantial evidence, we evaluate whether the decision was reasoned and supported. *Grotts*, 27 F.4th at 1279. The ALJ's decision before us satisfies that standard, having provided significantly more than a "minimal[ ]" explanation for her reasoning. *Crowell*, 72 F.4th at 817. We will not supplant the ALJ's judgment with our own.

## CONCLUSION

For these reasons, Lelia M.'s objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. Accordingly, the Magistrate Judge's Report and

---

[4] On review before the Magistrate Judge, Lelia M. argued that the ALJ had improperly relied on evidence of her daily activities as evidence of the non-severity of her mental impairments. In his Report and Recommendation, the Magistrate Judge rejected this contention, explaining that Lelia M. "herself reported engaging in psychologically demanding activities, including extensive chores and childcare." R. & R. 8, dkt. 19. Though Lelia M. did not take issue with the ALJ's reliance on her daily activities in her instant objection, we note that the ALJ was well within her discretion to consider this evidence. *Crowell v. Kijakazi*, 72 F.4th 810, 817–18 (7th Cir. 2023).

Recommendation, dkt. 19, is hereby **ADOPTED**. Final judgment shall enter by separate document.

   IT IS SO ORDERED.

Date: 3/25/2024

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Elaine Kuntz
Social Security Administration
elaine.kuntz@ssa.gov

Eric Harris Schepard
SSA-Ogc
eric.schepard@ssa.gov

Edward A. Wicklund
OLINSKY LAW GROUP
twicklund@windisability.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov